UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

JUAN CARLOS HERNANDEZ,
Petitioner,

v.                                    ACTION No. 4:05-cv-40068-PBS

DAVID L. WINN, Warden,
Respondent.

MEMORANDUM IN OPPOSITION TO
MOTION TO DISMISS ACTION AS MOOT

Preliminary

Petitioner, JUAN CARLOS HERNANDEZ, by his counsel, interposes this

memorandum in opposition to the Government's motion to dismiss Mr.

Hernandez' petition as moot.  Mr. Hernandez' remains subject to arrest and

deportation/exclusion if the reasons for his release have not been adjudicated.

The government's voluntary administrative release of Mr. Hernandez carries

collateral consequences sufficient to state an Article III controversy.  Mr.

Hernandez requests that the government answer the petition under the terms of

this Court's May 5, 2005 order and that the case should proceed to a

determination and final order. [1]

---

[1] 28 USC §2248:  The allegations of a return to the writ of habeas corpus or of an
answer to an order to show cause in a habeas corpus proceeding, if not traversed,
shall be accepted as true except to the extent that the judge finds from the
evidence that they are not true

The government should not be allowed to obtain a disposition of this action without a finding that Mr. Hernandez' 14 years' post-incarceration was a violation of law.  Mr. Hernandez is entitled to a ruling that his detention was unlawful under the Supreme Court's interpretation of 8 USC §1231 (a) (6) (allowing for detention beyond the 90-day removal period) in *Martinez*.  *Clark v. Martinez*, 125 S.Ct. 716, 160 L.Ed.2d 734 (U.S. 01/12/2005).  The government's attempt to avoid an adjudication aids the assumption of power by U.S. administrative officials to decide matters delegated by the Constitution to the judiciary. Administrative agents should not be vested with the authority to render decisions concerning the length of detention.

## ISSUES

The issues presented are:

- Whether the controversy presented by the petition is moot because petitioner is no longer in detention, even if severe "collateral consequences" can lead to renewed detention?

- Whether the REAL ID Act divests this Court of jurisdiction even though the matter before the Court is not removal proceeding or asylum determination but a constitutional issue?

## FACTS

Petitioner, Juan Carlos Hernandez, is a 49 year-old Cuban national.  He came to this country in the 1980 Mariel Boatlift.  He was convicted in Montgomery County, New York in 1984 of second-degree burglary and grand

theft.  He served a committed sentence in the prisons of the State of New York

beginning 1984.  During his confinement, he was deemed inadmissible under 8

USC § 1182(a).  (See, September 7, 1984 INS report attached to Petition.)  Upon

the expiration of his sentence of incarceration, the INS confined him in the US

Bureau of Prisons from 1991 until releasing him this year on about May 13, 2005

(just two days after the effective date of the REAL ID Act).

The INS kept Mr. Hernandez for 14 years in temporary detention under 8

USC §1231(a)(6).   Before the Supreme Court's ruling in *Martinez (infra)* this

January, the INS construed the operative language of the Immigration and

Nationality Act as allowing the indefinite or unlimited detention of those

individuals who had not been admitted to the United States and were excludable

for having committed "aggravated felonies".  8 USC §1231(a)(6)("may be detained

beyond the removal period…").  (The INS had applied different standards to

those who had been lawfully admitted but were later found to be deportable.)

The INS had no hope of removing Mr. Hernandez and other Mariel Boat Lift

detainees to Cuba,.  Nonetheless, it interpreted its authority to hold an alien for

deportation "as long as reasonably necessary" to mean that the alien could be

held indefinitely.  The Supreme Court has now ruled that such detention was not

justified by any reasonable interpretation of the applicable immigration statutes.

The Secretary of Homeland Security may not detain inadmissible aliens beyond

the 90-day statutory removal period where removal to the home country -

specifically Cuba - is not reasonably foreseeable. *Clark v. Martinez*, Nos. 03-878, 03-7434, __ US __ 125 S.Ct. 716 (2005).

In what *may be* part of an effort to evade an unfavorable adjudication and its concomitant effect on subsequent proceedings against Mr. Hernandez and others similarly situated, the ICE has ordered Mr. Hernandez released and now claims that the controversy is moot. In the alternative, it maintains that the Court lacks jurisdiction to hear the §2241 petition of a deportable or excludable alien in the wake of the REAL ID Act.

There are reasons to believe the controversy is not moot. The United States still maintains agencies for the administrative detention of immigration probationers of the Mariel Boat Lift. Mr. Hernandez and others are still subject to administrative detention in accordance with regular administrative practices of ICE. As before, there is no foreseeable chance of repatriation to Cuba. (See, *Clark v. Martinez, supra*, the government conceding that it is no longer even involved in repatriation negotiations with Cuba.)

Mr. Hernandez alerts the Court to the 9th Circuit's factual findings of the concurring opinion in the *Armentero* decision of June 21, 2005. *See, Armentero v. Immigration and Naturalization Service*, No. 02-55368 (9th Cir. 06/21/2005). Mr. Hernandez quotes at length:

> I concur in the order to dismiss this matter on the basis of the fugitive disentitlement doctrine. I write separately, however, to express my concern over the increasing assumption of power by U.S. administrative officials to decide matters vested by our constitution to the judiciary. Administrative agents cannot be

4

vested with the authority to render decisions concerning the length
of detention. Such decision-making power rests in the hands of a
judicial officer..

8 U.S.C. § 1231(a)(6) provides in relevant part: "An alien ordered
removed who is inadmissible under . . . section 1182 of this title . . .
may be detained beyond the removal period."

8 C.F.R. §§ 212.12-13 (the "Cuban Review Plan"), adopted in 1987,
confers special administrative authority to a Cuban Review Panel
to determine a Mariel Cuban detainee's suitability for parole. The
Panel consists of two or three persons selected from the staff of the
Bureau of Immigration and Customs Enforcement (BICE), a
division of the Department of Homeland Security. See 8 C.F.R. §
212.12(c). A Mariel Cuban detainee may be released on parole only
"for emergent reasons or for reasons deemed strictly in the public
interest."

8 C.F.R. § 212.12(b)(1). The ultimate decision to release a Mariel
Cuban detainee is made by the Associate Commissioner for
Enforcement, a single administrative official. See 8 C.F.R. §
212.12(d)(2).

Although that authority has been severely limited in *Clark v. Martinez*, without

an adjudication, Mr. Hernandez remains at risk of renewed detention.

ARGUMENT
POINT I:
COLLATERAL CONSEQUENCES
OF NON-ADUDICATION MAKE
JUSTICIABLE CONTROVERSY

This case presents a live controversy requiring an adjudication.  The risk

of renewed detention is not speculative.  An adjudication that Mr. Hernandez'

detention was unlawful under *Clark v. Martinez*  establishes *res judicata*  that he

cannot be detained without more because of his excludable status.  The risk of

rearrest is real.  ICE maintains a procedure for administrative detention and Mr.

5

Hernandez has no lawful immigration status; nor is there any question for the

foreseeable future of repatriating this quadriplegic 49 year-old man to Cuba.

The issue of mootness presented in this case is not new; a prisoner's mere

release does not make his conviction moot.  The analysis is whether the

petitioner's status exposes him to a continuing injury in fact to satisfy the dictates

of Article III.  *Spencer v. Kemna*, 523 U.S. 1, 118 S.Ct. 978, 140 L.Ed.2d 43 (U.S.

03/03/1998)(holding Missouri convict's future ineligibility for parole if convicted

of separate offense in future was not a cognizable claim of a petitioner released

after expiration of sentence).

> … Once the convict's sentence has expired, however, some concrete
> and continuing injury other than the now-ended incarceration or
> parole -- some "collateral consequence" of the conviction -- must
> exist if the suit is to be maintained. See, e.g., *Carafas* [391 U. S. 234
> (1968)] supra, at 237-238. In recent decades, we have been willing to
> presume that a wrongful criminal conviction has continuing
> collateral consequences (or, what is effectively the same, to count
> collateral consequences that are remote and unlikely to occur). See
> *Sibron v. New York*, 392 U. S. 40, 55-56 (1968).
>
> ****
>
> The question whether a particular person is a proper party to
> maintain the action does not, by its own force, raise separation of
> powers problems related to improper judicial interference in areas
> committed to other branches of the Federal Government. Such
> problems arise, if at all, only from the substantive issues the
> individual seeks to have adjudicated. Thus, in terms of Article III
> limitations on federal court jurisdiction, the question of standing is
> related only to whether the dispute sought to be adjudicated will be
> presented in an adversary context and in a form historically viewed
> as capable of judicial resolution.

*Spencer v. Kemna, supra.*

POINT II:
THE REAL ID ACT DOES NOT
DENY THIS COURT  HABEAS
CORPUS JURISDICTION

A review of the circuits shows that *habeas corpus* petitions of aliens raising

constitutional claims remain in this Court's jurisdiction.  Since Mr. Hernandez is

seeking adjudication of his claim - a finding that his detention under 8 USC

§1252(a) was unconstitutional - the instant petition does not challenge a removal

order or the determination of asylum status.  The circuits addressing this issue

have been uniform in their interpretation of the REAL ID Act only as a bar to

immigration status review:

> REAL ID Act of 2005 § 106(a)(1)(B), 119 Stat. at 311. Even as
> amended, however, § 1252(a)(2)(A) is a bar only to claims arising
> out of removal orders. As it turns out that there is no removal order
> here, § 1252(a)(2)(A) does not apply, and the language of §
> 1252(a)(5) is therefore not implicated.

*Sissoko v. Rocha*, No. 02-56751 (9th Cir. 06/13/2005).

> **Nothing in subparagraph (B) or (C), or in any other provision of
> this act (other than this section) which limits or eliminates
> judicial review, shall be construed as precluding review of
> constitutional claims or questions of law raised upon a petition
> for review filed with an appropriate court of appeals in
> accordance with this section.**
>
> * * * *
>
> We observe that the Ninth Circuit, the only other court of appeals
> to have considered this question thus far, has reached the same
> conclusion. See *Fernandez-Ruiz v. Gonzales*, __ F.3d __, 2005 WL
> 1301593 (9th Cir. May 31, 2005), at *1 (concluding that alien
> petitioner's convictions did not divest court of jurisdiction pursuant
> to § 1252(a)(2)(B) because REAL ID Act restores judicial review of

constitutional claims and questions of law presented in petitions for
review pursuant to new provision § 1252(a)(2)(D)).

*Papageorgiou v. Gonzales*, No. 04-3135 (3d Cir. 06/24/2005).

As to claims concerning challenges to removal orders, this Circuit has

ruled that the REAL ID Act does apply and requires transfer pre-May 11, 2005

petitions from District Court to the Circuit court.[2]  The two UD District Court

cases counsel has found citing the REAL ID Act were petitions challenging

removal; both resulted in order transferring of pre-May 11, 2005 actions to the

Court of Appeals.  See, *Rashid V. Ashcroft*, 05-CV-

0110S(F)(W.D.N.Y.06/06/2005)(finding that jurisdiction with Circuit Court)  and

---

[2]

*Singh v. Gonzales*, No. 04-2000 (1st Cir. 06/27/2005) ("This petition comes to us
after the passage of the REAL ID Act of 2005, Pub. L. 109-13, 119 Stat. 731, which
alters, among other things, this court's standard of review of certain agency
determinations and the burden of proof in asylum cases. The issues in this case
do not call for application of the different standards under the Act. In particular,
the provisions dealing with the burden of proof in asylum cases are not
applicable to this case as Singh's petition was filed prior to the effective date of
the amendments…. "); *Keo Chan v. Gonzales*, No. 04-1937 (1st Cir. 07/01/2005)
("This petition comes to us after the effective date for the REAL ID Act of 2005,
Pub. L. 109-13, which alters this court's standard of review on several issues in
immigration cases. These alterations do not apply to the issue presented here. ");
*Olujoke v. Gonzales*, No. 04-1252 (1st Cir. 06/09/2005) ("Section 101(a)(3) of Title I
of the REAL ID Act of 2005, Pub. L. No. 109-13, § 101(a)(3), 119 Stat. 231, 303
(2005) (to be codified at 8 U.S.C. § 1158(b)(1)(B)), contains new standards
referable to credibility determinations in cases involving "applications for
asylum, withholding, or other relief from removal." Id. § 101(h)(2), 119 Stat. at
305. These standards are only applicable, however, to applications "made on or
after" May 11, 2005 (the date of enactment). See id. Since the petitioner's
application was made long prior to that date, the new standards have no bearing
here.")

*Ellis V. U.S. Immigration And Customs Enforcement*, 05-Cv-192-PKC (S.D.N.Y. 06/01/2005).

The government's stance in the case at bar is part of the discourse over the constitutionality of restrictions on the writ of habeas corpus. The discourse is whether the executive may have unchecked authority to detain aliens and certain designated classes of persons.  See concurrence in *Armentero v. Immigration and Naturalization Service*, No. 02-55368 (9th Cir. 06/21/2005) discussing *Rumsfeld v. Padilla,* 124 S. Ct. 2711 (2004).   The question there described was whether

> *Padilla,* did not entirely abandon the Supreme Court's earlier admonition that "we have consistently rejected interpretations of the *habeas corpus* statute that would suffocate the writ in stifling formalisms or hobble its effectiveness with the manacles of arcane and scholastic procedural requirements." *Hensley v. Municipal Court*, 411 U.S. 345, 350 (1973). In the special circumstances of immigration habeas petitions like Armentero's, the procedural rule for which the government argues would indeed "suffocate the writ," as I proceed to demonstrate after some important preliminaries.

CONCLUSION

For the reasons set forth above, the government's motion should be denied.

Dated this 17th day of June, 2005 at Boston, Massachusetts.

/S/ *Kevin Lawrence Barron*
_____
Kevin Lawrence Barron BBO No. 550712
Counsel to Juan Carlos Hernandez
453 Washington Street - 5th Fl.
Boston, MA 02111-1325
Telephone No. 617-482-6368
Cellular No. 617-407-6837
E-mail: k@lawyerbarron.com
ELECTRONIC FILING