UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| JUAN CARLOS HERNANDEZ, ) | | |
| Petitioner, ) | | CIVIL ACTION NO: |
| ) | | 05-40068-PBS |
| v. ) | | |
| ) | | |
| ) | | |
| DAVID WINN, ) | | |
| Respondent. ) | | |

**RESPONDENT'S MEMORANDUM IN SUPPORT OF THE MOTION TO DISMISS
THE INSTANT ACTION AS MOOT**

**Facts and Procedural History**

On May 6, 2005, Juan Carlos Hernandez, a Mariel Cuban,[1] filed the instant petition arguing solely that his continued detention was in contravention of law in light of the Supreme Court's decision in Clark v. Martinez, 125 S.Ct. 716 (2005).[2]  See also, Habeas Petition.

---

[1] In 1980, approximately 120,000 Cubans left the Mariel harbor in Cuba and crossed to the United States by boat.  See, e.g., Rosales-Garcia v. Holland, 322 F.3d 386, 390-91 (6th Cir. 2003).  The INS detained the aliens at the border and decided to exclude them from entry into the United States.  After this initial detention, Petitioner, like other Mariel Cubans, was granted conditional parole into the United States and released by the INS under § 212(d)(5) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1182(d)(5)(A), which authorizes the Attorney General in his discretion to parole into the United States any alien who is applying for admission to the United States.
    This parole is not to be "regarded as an admission," 8 U.S.C. § 1182(d)(5)(A), and Petitioner is "legally considered to be detained at the border and hence as never having effected entry into this country."  Sierra v. INS, 258 F.3d 1213, 1218 (10th Cir. 2001).  Petitioner does not challenge this status.

[2] In Clark, the Supreme Court concluded that the holding of Zadvydas v. Davis, 533 U.S. 678 (2001), that immigration officials could not detain aliens for purposes of effecting removal beyond a six month period in the absence of evidence that removal could be effected in the reasonably foreseeable future, extended to aliens such as petitioner who had not been admitted to the United States.

On May 12, 2005, the Respondent (Winn)[3] filed a Notice that the Petitioner would be released (and Petitioner was in fact released) on May 13, 2005. At a status hearing on May 16, 2005, Respondent (Winn) informed the district court of the Petitioner's release and orally moved to dismiss the action as moot.

The district court appointed counsel for petitioner and requested that Petitioner respond to the government's motion to dismiss.

On July 18, 2005, the district court, *sua sponte*, transferred the matter to the First Circuit citing Section 106(c) of the REAL ID Act of 2005.

Finding transfer inappropriate, on September 16, 2005, the First Circuit remanded the matter for ruling on the Respondent's motion to dismiss. See Hernandez v. Gonzales, — F.3d. —, 2005 WL 2254128 (1st Cir. 2005).

## Argument

**I.     Introduction**

Detention of aliens subject to an order of exclusion, as Hernandez, is governed by 8 U.S.C. § 1231. Under that section, the Attorney General is required to detain and effect removal of criminal aliens upon the entry of a final order of removal within 90 days. 8 U.S.C. § 1231(a)(2). After the 90-day "removal period" ends, if the alien has not been removed, the alien may be released subject to conditions. 8 U.S.C. § 1231(a)(3). Subsection 1231(a)(6), however, authorizes the Attorney General to continue to detain certain criminal aliens, or upon a finding that the alien is "a risk to the community or unlikely to comply with the order of removal." 8

---

[3]On appeal, the Respondent was re-captioned to substitute Attorney General Gonzales who would have been the appropriate Respondent had the matter been properly transferred under the REAL ID Act of 2005. In light of the First Circuit's remand, the government responds on behalf of the original Respondent.

U.S.C. § 1231(a)(6). Where an alien is detained pursuant to this section, ICE regulations provide for periodic review. See 8 C.F.R. § 241.4.

In Zadvydas v. Davis, 533 U.S. 678 (2001), the Supreme Court considered the government's authority to detain admitted aliens who cannot be promptly removed to their own or a third country. It found that the post-order detention statute at 8 U.S.C. § 1231(a)(6) was ambiguous, which enabled it to narrowly construe the statute to contain an implicit time limitation, and thus avoid deciding whether it violated the Constitution to indefinitely detain former lawful permanent resident aliens with final but unenforceable deportation orders. As construed in Zadvydas, § 1231(a)(6) only authorized detention of admitted aliens for a period reasonably necessary to remove them -- presumptively six months absent evidence to show that deportation is likely to occur in the reasonably foreseeable future beyond that time. See Zadvydas, 533 U.S. at 696-99, 701.

The Zadvydas majority reserved the question with respect to unadmitted or excludable aliens who, like Hernandez, never "gained initial admission to this country," which "would present a very different question." Zadvydas, 533 U.S. at 682. In Clark v. Suarez-Martinez, 125 S.Ct. 716 (2005), however, the Court held that, while the question presented by such aliens is different, and while § 1231(a)(6) is susceptible to different interpretations, the same statute can only have one meaning. Therefore, the same construction adopted in Zadvydas applies to both admitted and unadmitted aliens who are subject to detention under 8 U.S.C. § 1231(a)(6) after the removal period in § 1231(a)(1) expires. Id. at 723 ("because the statutory text provides for no distinction between admitted and nonadmitted aliens, we find that it results in the same answer").

**B.      Hernandez's Release on Conditions Moots The Instant Claim**

Hernandez filed the instant petition seeking release from continued detention arguing that further detention was not authorized under 8 U.S.C. § 1231 as interpreted by the Supreme Court in Zadvydas and Clark. Since Hernandez has been released, there is no further relief available and the claim is moot.

Habeas exists "to enforce the right of personal liberty; when that right is denied and a person confined, the federal court has the power to release him. *Indeed, it has no other power; . . . it can act only on the body of the petitioner*." Fay v. Noia, 372 U.S. 391, 430-31 (1963) (emphasis added); Allen v. McCurry, 449 U.S. 90, 98 n. 12 (1980) (noting that the "unique purpose of habeas corpus" is "to release the applicant for the writ from unlawful confinement").[1] No further or different relief is available to Hernandez under either the Supreme Court's decisions in Zadvydas or Clark. Quite simply, where the Court's power is limited to ordering the release from allegedly unlawful custody, no meaningful relief may be granted to an individual already released. See Lewis v. Cont'l Bank Corp., 494 U.S. 472, 477 (1990) ("To invoke the jurisdiction of a federal court, a litigant must have suffered, or be threatened with, an actual injury traceable to the defendant and likely to be redressed by a favorable judicial decision."); see also, Blanco v. United States, 2005 WL 112667 (E.D. Kent. 2005) (release moots Zadvydas claim of Mariel Cuban); Justiz-Cepero v. INS, 2004 WL 915612, *5 (N.D. Tex. 2004) ("Because

---

[1] Although not germane to this action (as Hernandez makes no challenge to his immigration status), prior to the adoption of the REAL ID Act of 2005, district courts also possessed jurisdiction to adjudicate legal or constitutional errors in removal proceedings. Such jurisdiction no longer exists. See 8 U.S.C. § 1252(a)(5), as amended by REAL ID § 106(a)(1)(B), Pub. L. No. 109-13, 119 Stat. at 310-11. 8 U.S.C. § 1252(b)(9), as amended by REAL ID § 106(a)(2), Pub. L. No. 109-13, 119 Stat. at 3118 U.S.C. § 1252(g) as amended by REAL ID § 106(a)(3).

the government has reevaluated petitioner's eligibility for immigration parole, granted him such parole, and released him from immigration detention subject to conditions of supervised release, petitioner has already obtained all the relief that he sought in the instant action.  In fact, he has obtained all the relief to which he would have been entitled had he succeeded on the instant petition for writ of habeas corpus."); Larose v. Ashcroft, 2004 WL 1773730 *1 (E.D. La. 2004) (same).

To the extent Petitioner contends that the instant claim is not moot because future custody of the Petitioner[2] is possible, an adjudication of the alleged invalidity of past custody would be of no assistance.  The validity of future custody is both speculative and not yet ripe. See, e.g., Suarez Tejada v. United States, 85 Fed. Appx. 711, 715 (10th Cir. 2005) ("allegations of potential future custody are too attenuated to satisfy the requirements of Article III.").[3]

It is far from clear that any future custody would be unlawful.  The government may take a paroled alien into custody for purposes of removing him from the United States, and may detain an alien who violates the conditions of post-order release in 8 U.S.C. § 1231(a)(3). Clark, 125 S.Ct. 716, 721 n.3 (2005); Zadvydas, 533 U.S. at 695, 696, 699-700.[4]  The prospect that Hernandez may unlawfully commit an act contrary to the terms of his parole does not afford him grounds for continuing to challenge his immigration detention after he was released.  Spencer v.

---

[2]To the extent Petitioner alleges that he "and others," Petitioner's Memorandum, p .4, may be detained in the future, the dispute before this Court is as to Mr. Hernandez, not "others."

[3]The Tenth Circuit permits citation to unpublished opinions.  See Tenth Circuit Rule 36.3(B).

[4]See also, Clark, 125 S.Ct. at 728 ("[A]ny alien released as a result of today's holding remains subject to the conditions of supervised release . . . And, if he fails to comply with the conditions of release, he will be subject to criminal penalties-including further detention.") (citations omitted) (O'Connor, J., concurring).

Kemna, 523 U.S. 1, 14-15 (1998) (citing inter alia City of Los Angeles v. Lyons, 461 U.S. 95, 102-03 (1983)). The courts also cannot insulate Hernandez from other unknown events, such as a change in political conditions in Cuba or other future event relative to his continued stay in this country. See Zadvydas, 533 U.S. at 695; cf. Weinstein v. Bradford, 423 U.S. 147, 149 (1975).

Any suggestion that DHS will fail to conform its conduct to law, is unfounded, and wholly insufficient reason to maintain this claim. It can be assumed that the Secretary will comply with the law, including the Supreme Court's decision in Clark, when exercising his detention and parole authority under § 1231(a)(6). See United States v. Chemical Foundation, Inc., 272 U.S. 1, 14-15 (1926) ("the presumption of regularity supports the official acts of public officers, and, in the absence of clear evidence to the contrary, courts presume that they have properly discharged their duties."); Kilgore Nat'l Bank v. Federal Petroleum Board, 209 F.2d 557, 560 (5th Cir. 1954) (same). Moreover, at issue in the circumstance of future detention would be the legality of *that* custody, not the custody from which Petitioner has already been released. It is impossible for this Court to render any judgment in the present habeas action as to the validity of potential future custody.[5]

Petitioner further points out that "collateral consequences" may render a dispute justicable. Such argument simply states a truism. Petitioner identifies no challenged "collateral consequence" in this case other than the risk of renewed detention. Petitioner makes no

---

[5] The Respondent stipulates that absent re-involvement with the criminal justice system, a change in the Cuban government enabling him to return to Cuba, or the willingness of a third country to accept him, a violation of the conditions of parole, or some other changed circumstance authorizing detention consistent with the Supreme Court's interpretation of 8 U.S.C. § 1231, it shall not re-detain the Petitioner. See, e.g., Picrin-Peron v. Rison, 930 F.2d 773, 776 (9th Cir. 1991). Contrast, Rosales-Garcia v. Holland, 322 F.3d 386, 395-96 (6th Cir. 2003) (finding that a habeas claim was not moot where an alien released from detention could be could be subject to further detention upon a finding that such detention was "in the public interest.").

challenge to the conditions of his release.  Nor would such a challenge have merit.  See Clark, 125 S.Ct. at 721 n.3, and 728.  Similarly, it is undisputable that to the extent that Petitioner challenges the validity of his order of exclusion, such claims are outside this Court's jurisdiction.  See supra, note 4.   Perhaps most importantly, Petitioner identifies no relief that may be afforded by this Court beyond release from detention.

## Conclusion

For the reasons stated herein, the instant claim should be dismissed as moot.

Respectfully submitted,

MICHAEL J. SULLIVAN
United States Attorney

/s/ Mark J. Grady
MARK J. GRADY
Assistant U.S. Attorney
U.S. Attorney's Office
John Joseph Moakley U.S. Courthouse
1 Courthouse Way, Suite 9200
Boston, MA   02210
Tel. No. (617) 748-3136